# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BARTA LAND CO., LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:03CV478 |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND |
| **THE UNITED STATES OF AMERICA,** | ) | ORDER |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **INTERIOR, BUREAU OF** | ) | |
| **RECLAMATION,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for decision after trial to the bench on August 18, 2005. The court has jurisdiction pursuant to 28 U.S.C. § 1346(f), which confers exclusive original jurisdiction on the federal district court for civil quiet title actions against the United States arising under 28 U.S.C. § 2409a. The parties consented to jurisdiction by a United States magistrate judge and, on March 16, 2005, the case was transferred to the undersigned magistrate judge by United States District Judge Robert W. Pratt, pursuant to 28 U.S.C. § 636(c). **See** Filing No. 61.

## I. BACKGROUND

This is an action pursuant to 28 U.S.C. § 2409a for the adjudication of the rights of the plaintiff, Barta Land Co., LLC, to use real property in which the United States (the government or defendant) claims an interest. This case involves a dispute over the legal rights of the plaintiff to use a right-of-way of a few hundred feet[1] (the Right-of-Way at issue) located on government land (the Federal property at issue). The Right-of-Way at issue connects

---

[1] Testimony presented at trial conflicted as to the length of the Right-of-Way at issue. R. Keith Christensen testified that the length of the Right-of-Way at issue was approximately 150 feet (TR.114-115). Fredrick Ore testified to a distance of 600-800 feet (TR.153). The length of the Right-of-Way at issue is not a fact material to the issues before the court, and therefore the court need not make a factual finding as to the exact length of the Right-of-Way at issue.

Nebraska State Highway 97 (Hwy. 97) to an area of the plaintiff's property where a lodge and four cabins are located (the plaintiff's property at issue) (TR. 175). **See also** Pl.'s Ex. 21. The Right-of-Way at issue is the northern terminus of a longer trail road (the Route) that terminates at the Nebraska Highway Spur 16B. Both the Federal property at issue and the plaintiff's property at issue are located in Cherry County, Nebraska, in the North Half of Section 18, Township 30 North, Range 30 West of the Sixth Principal Meridian. **See** Ex. 3.

On November 29, 2004, the defendant filed a motion for summary judgment on all issues and to dismiss the complaint with prejudice. **See** Filing No. 36. Additionally, the initial plaintiffs, R. Keith Christensen and Marian I. Christensen, trustees (the Christensens), filed a motion for summary judgment on all issues. **See** Filing No. 49. The court denied (Filing No. 59) both the defendant's and the Christensens' motions for summary judgment, but the court's Order did conclude, in relevant part, that the Christensens could not be issued an injunction against the United States government, and that the 1962 Deed to the Federal property at issue was unambiguous and no express easement appurtenant to the plaintiff's property at issue was reserved in the 1962 Deed. The court subsequently granted (Filing No. 71) the defendant's motion for partial summary judgment (Filing No. 62), concluding that the Christensens could not claim a prescriptive easement against the United States government. **See also** 28 U.S.C. § 2409a(n). On August 15, 2005, the court granted the Christensens' Motion for Substitution of Parties (Filing No. 79) and ordered the substitution of the plaintiff and the dismissal of the Christensens from the case.

The issues remaining for trial by the court are (i) whether the plaintiff has a right to use the Right-of-Way at issue as evidenced by an express easement; and (ii) whether the plaintiff has a right to use the Right-of-Way at issue as evidenced by an easement by implication from former use—that is, from the use of the Route by Beel Cattle Company, its predecessors, their invitees and licensees, and others—as a result of a 1962 conveyance, such that the court may grant the plaintiff the relief it seeks. **Cf.** Filing No. 60 - Pretrial Trial Order (PTO) ¶ C.

Before trial the plaintiff submitted a trial brief (Filing No. 87). The defendant also submitted a trial brief (Filing No. 83). The court further accepted closing arguments by written brief. The plaintiff filed a brief (Filing No. 95) and a rebuttal brief (Filing No. 97). The

2

defendant also filed a brief (Filing No. 96). A transcript (TR.) was prepared and filed in this matter on September 13, 2005. **See** Filing No. 94. On October 14, 2005, at the conclusion of the post-trial briefing, the matter was deemed submitted.

## II.  FINDINGS OF FACT

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact based upon the evidence and the uncontroverted facts set forth in the pretrial order.

During the 1950s through the early 1960s, the government developed and pursued the project of damming the Snake River to create the Merritt Reservoir in Cherry County, Nebraska (the Merritt Reservoir Project). In 1959, Leonard C. Beel and his wife Sadie, and Gerald R. Beel and his wife Marianne, granted an easement to the government to use the portions of the Route that crossed the Beel's land in furtherance of the Merritt Reservoir Project. **See** Pl.'s Ex. 7 (Donation Grant of Easement (incomplete execution)); Def.'s Ex. 107 (same (completely executed)). During the course of the Merritt Reservoir Project, government employees used the Route regularly (TR. 31-32). The grant was only temporary, however, and terminated upon the earlier of March 1, 1960, or the completion of the Merritt Dam Access Road. **See** Pl.'s Ex. 7; Def.'s Ex. 107.

In 1962, the government pursued the purchase of the Federal property at issue in furtherance of the Merritt Reservoir Project. The June 12, 1962 Beel Cattle Company corporate minutes adopting a resolution to sell real property to the government, including the Federal property at issue, *inter alia*, were recorded on June 27, 1962. Def.'s Ex. 105 at 12. The minutes do not identify any applicable easements. *Id.* The officers of the Beel Cattle Company authorizing the sale to the government were Leonard C. Beel, Jr. and his wife Nadine. *Id.* The Beel Cattle Company retained land contiguous to the land conveyed to the government, including the plaintiff's property at issue in this case.

The June 4, 1962 Land Purchase Contract between Beel Cattle Company and the government (the 1962 Land Purchase Contract) (Plaintiff's Exhibit 4) was recorded on June 26, 1962. Pl.'s Ex. 4; Def.'s Ex. 105 at 13. The 1962 Land Sales Contract specifies, in

relevant part, that the real property is transferred to the government "subject to any existing rights-of-way in favor of **the public** or in **third parties** for roads, railroads, telephone lines, transmission lines, ditches, conduits or pipelines on, over or across said lands. . . ." Pl.'s Ex. 4 at ¶ 11 (emphasis added).  Paragraph 11 of the 1962 Land Sales Contract further provides, in relevant part:

> <u>EXCEPTING herefrom and reserving to the Vendor, his heirs, successors and assigns</u> all oil, gas and other minerals except sand and gravel and other materials used in the construction of the Merritt Dam and Reservoir.  It is understood and agreed that the Vendor, his heirs, successors and assigns, shall have the right to prospect for, mine and remove any oil and gas and other minerals, except sand and gravel, but any rights exercised hereunder shall be exercised in such a manner as not to interfere with the construction, operation and maintenance of the proposed Merritt Dam and Reservoir, and Provided, further, that before any such exploration and/or removal of oil, gas and/or other minerals from said lands, the Vendor shall obtain prior written approval from the Secretary of the Interior or his duly authorized representative, of the Vendor's plan for such exploration and removal, such plan to specifically set out the methods and machinery to be used and the site or sites of such operation.  It is understood that miner-like methods shall be employed in the extraction and removal of any such oil, gas and other minerals and that no pollution of the water to be stored in the proposed Merritt Dam and Reservoir shall result from such operations and that the determination of the Secretary of the Interior or his duly authorized representative, acting for and on behalf of the United States with respect hereto, shall be final and conclusive.

Pl.'s Ex. 4 at ¶ 11 (emphasis added).

The General Warranty Deed between Beel Cattle Company and the government was recorded on August 8, 1962 (the 1962 Deed) (Plaintiff's Exhibit 3).  Pl.'s Ex. 3; Def.'s Ex. 105 at 17.  The 1962 Deed contains the following reservation:

> <u>And said Grantor</u>, for itself and for its successors and assigns, <u>does hereby covenant, promise, and agree with the Grantee</u>, its successors and assigns, that at the delivery of these presents it is lawfully seized in its own right of said premises; <u>that they are free from encumbrances, subject, however, to:</u>

4

> <u>Any oil, gas or mineral rights reserved to or outstanding in third parties as of June 4, 1962, and subject to any existing rights-of-way in favor of **the public** or in **third parties** for roads, railroads, telephone lines, transmission lines, ditches, conduits, or pipelines on, over, or across said lands, including all rights-of-way heretofore granted to the United States.</u>

Pl.'s Ex. 3 (emphasis added). At the time of this 1962 Deed, there were no recorded easements affecting the land deeded by Beel Cattle Company to the government. PTO ¶ (B)(12); Def.'s Ex. 105; Def.'s Ex. 111 (federal certification of inspection certifying that the real property purchased by the government from Beel Cattle Company was not subject to any rights or interests adverse to Beel Cattle Company or the United States, and all interests are evidenced by the public records).

Prior to the creation of Merritt Reservoir, the Route did not terminate in Section 18, but instead continued north through Section 7 (the earlier Trail Road), where it intersected with a trail road running parallel to the Snake River. Pl.'s Ex. 24. Use of the earlier Trail Road began well before 1950. **See** Pl.'s Ex. 24 (a 1950 United States Department of the Interior geological survey); Pl.'s Ex. 23 (a 1956 map); Def.'s Ex. 121 (same); Pl.'s Ex. 27 (a March 6, 1962 Plat Map produced by the Bureau of Reclamation of the Department of the Interior regarding the creation of Merritt Reservoir); Def.'s Ex. 109 (same). Gerald Beel testified that he had lived in the area since he was born in 1926, his family lived in the area as early as 1902 (TR. 47), and he had always known the earlier Trail Road to be in use (TR. 51).

Prior to 1962, Gerald Beel testified that the earlier Trail Road was generally traveled by members of the public, that is: fishermen, fire fighters, and ranchers who lived in the area used it to go to the town of Valentine and the Kennedy Post Office, to access their pastures, and when installing wells (TR. 25, 31). Furthermore, employees of the government used the Route heavily during the Merritt Reservoir Project (TR. 31-32). The earlier Trail Road was not oiled or paved, and very little of it was graded or graveled (TR. 52). Maintenance of the earlier Trail Road was not undertaken by the county but was, instead, left up to the local ranchers

(TR. 38). At one time the county built a bridge along the Route over Gordon Creek but the bridge washed out and was never rebuilt (TR. 37, 83-84). Gerald Beel later installed a culvert across the Gordon Creek, but it also washed out and was not rebuilt (TR. 37). As a consequence, the section of the Route that intersects with Gordon Creek can only be used when Gordon Creek is passable (TR. 37).

The creation of Merritt Reservoir shortened the earlier Trail Road and created a new northern terminus for the earlier Trail Road, resulting in the Route discussed herein. The Route terminates in Section 18 and runs generally southeast from the northwest corner of the NE1/4 of Section 18, through Sections 17, 16, 21, and 22 approximately six miles (TR. 19) to terminate at a point approximately in the center of the SE1/4 of Section 27. Pl.'s Ex. 12; Def.'s Ex. 122; **see also** Pl.'s Ex. 25 (an April 11, 1978 aerial photograph taken by the Nebraska Department of Roads); Pl.'s Ex. 28 (two 1985 United States Department of the Interior geological surveys); Def.'s Exs. 119, 120 (same). The creation of Merritt Reservoir, in addition to other factors such as the construction of Hwy. 97 and the closing of the Kennedy Post Office, resulted in a significant decrease of traffic on the Route (TR. 33). In fact, the Route came to be used primarily by Gerald Beel and his ranching operation, and by the then-owners of the plaintiff's land (TR. 33). Gerald Beel testified that, generally speaking, it was not unusual for roads in the area to be abandoned or develop in a new location, depending upon the needs of the local users (TR. 51).

On or about August 10, 1992, Beel Cattle Company Ltd. transferred its ownership interest in 6.6 acres (consisting of the plaintiff's property at issue) to Coyote, Inc. (Harlin D. Welch acting on Coyote, Inc.'s behalf) (TR. 110-111). Pl.'s Ex. 13 at 7. Also on August 10, 1992, Beel Cattle Company Ltd. executed an Agreement for Access which grants to Coyote, Inc. "an equal interest in and to any privilege of access" Beel Cattle Company Ltd. "may have over and across real property owned by the Department of the Interior, Bureau of Reclamation or the United States Government, which access is over an existing roadway." Pl.'s Ex. 8 (August 10, 1992 Agreement for Access); Def.'s Ex. 112 (same). The Agreement for Access further states that Beel Cattle Company Ltd. "makes no warranty or representation whatsoever as to the quantity or quality of access for ingress and egress that [Coyote, Inc.] may be

6

acquiring by virtue of this agreement." Pl.'s Ex. 8; Def.'s Ex. 112. No legal description is provided for the location of any access. Also in 1992, Harlin D. Welch took a grader and concrete rock and improved the Right-of-Way at issue in this case (TR. 148, 175). This action improved the access from Hwy. 97 to the lodge and four cabins built by Welch on the plaintiff's property at issue around this same time (TR. 15, 108).

On January 10, 2000, the Chairman of the Cherry County Board of Commissioners received a letter from the United States Department of the Interior, Bureau of Reclamation (Bureau of Reclamation), executed by Fred R. Ore (Ore). Pl.'s Ex. 26. This letter explained the Bureau of Reclamation's policy toward the Right-of-Way at issue. The letter explained the Bureau of Reclamation would not interfere with any rights of the Beel Cattle Company to use the Right-of-Way at issue as it was historically used—to access its property for ranching purposes. *Id.* The letter further explained the Bureau of Reclamation had terminated a licensing opportunity it had offered to Cherry County to convert the Right-of-Way at issue to a county road because Cherry County failed to use the license and manage the Right-of-Way at issue as a road. *Id.*; **see also** Def.'s Ex. 113 (October 15, 1992 license from the United States to Cherry County, Nebraska, to, *inter alia*, construct and maintain the Route as a county road); Def.'s Ex. 114 (October 30, 1997 letter from the Bureau of Reclamation notifying the Cherry County Highway Superintendent that the Bureau of Reclamation was terminating the October 15, 1992 license). Finally, the letter stated it would return the federal land, including the Route, to its "original condition." Pl.'s Ex. 26.

On or about June 12, 2000, Coyote, Inc. transferred its ownership interest in the plaintiff's property at issue to James L. Powell. Pl.'s Ex. 13 at 10. Also on June 12, 2000, the government closed the Right-of-Way at issue to prohibit its use by anyone. PTO ¶ (B)(2). Specifically, the government's closure prevents the plaintiff's, and its successors', use of the Right-of-Way at issue to access the lodge and four cabins located on the plaintiff's property at issue. Ore was the area manager for the Bureau of Reclamation's Nebraska and Kansas office at this time (TR. 134). Ore testified that the decision to close the Right-of-Way at issue was based on the Bureau of Reclamation's policy favoring uses of federal land that benefit the

7

public generally, and disfavoring uses that benefit only private commercial interests, excepting historical agricultural uses (TR. 136-141, 149-150).

On or about July 10, 2002, James L. Powell transferred his ownership interest of the plaintiff's property at issue to the Christensens, the initial plaintiffs in this action. Pl.'s Ex. 13 at 11; Pl.'s Ex. 29; Def.'s Ex. 123. For the three years the Christensens owned the plaintiff's property at issue, they leased the lodge and cabins annually to a real estate company that arranged hunting excursions for $20,000, $25,000 and $30,000, respectively (TR. 119). These leases gave the hunters access to the entire ranch owned by the Christensens (TR. 125). Such sums were earned despite the fact that the Right-of-Way at issue was closed during this time (TR. 119). In April 2005, the Christensen's sold their ownership interest in the plaintiff's property at issue, including real property located in several sections of Township 30 North, Range 30 West and Township 29 North and Range 30 West, via warranty deed to the plaintiff. **See** Pl.'s Ex. 30 (April 22, 2005 warranty deed conveying to the plaintiff the plaintiff's property at issue); Pl.'s Ex. 31 (assigning via the April 22, 2005 Assignment the Christensens' interest in the instant litigation to the plaintiff). The consideration paid by the plaintiff was $10,027,720. Pl.'s Ex. 30.

Gerald Beel testified that despite the current closure of the Right-of-Way at issue, he had access to his land, and the plaintiff had general access to its land, by way of Nebraska Spur Highway 16B (TR. 62). At trial the plaintiff provided evidence of two possible alternative routes for accessing the plaintiff's property at issue from Hwy. 97 should the court not recognize a legal right for the plaintiff to use the Right-of-Way at issue.

Regardless of which of the two possible accesses the plaintiff could obtain from Hwy. 97, discussed below, any new road to the plaintiff's property at issue would have to pass through an area to the south of the Right-of-Way at issue, approximately one-quarter of a mile (east-west) by one-half of a mile (north-south), that is swampy and impassable for part of the year, generally during the spring and early summer, approximately five to six months annually (TR. 28, 43-44, 86, 116). To make the swampy area passable throughout the year, a bridge or culvert would have to be constructed across the area (TR. 59).

The first alternative access off of Hwy. 97 is an access south of the Right-of-Way at issue, referred to as the "Settlement" private access road (TR. 84). The "Settlement" is a subdivision that was laid out by Donald Pettigrew[2] (Pettigrew) for Leonard C. Beel, Jr. (TR. 40, 84). The Settlement private access road is not, however, for public use and is owned collectively by the landowners in the subdivision (TR. 84). The Settlement private access road could only be utilized by the plaintiff if an agreement could be negotiated allowing such use. Such an agreement would not, however, solve the problem of access because the Settlement private access road does not proceed the entire distance north from Hwy. 97 to the plaintiff's property at issue. The Settlement private access road currently terminates prior to reaching a swampy area just south of the Right-of-Way at issue (TR. 28, 43-44, 85).

Second, if the plaintiff could not negotiate a use agreement with the Settlement subdivision owners, the plaintiff could apply to the State of Nebraska for a highway access (TR. 89). Any access from Hwy. 97 would likely have to be three-quarters of a mile south of the Settlement's access from Hwy. 97, and then a road would have to be constructed winding around a range of hills back up to the plaintiff's property at issue (TR. 87). Any access granted would have to be paved which would increase the cost of constructing such access (TR. 87-88). A road connecting any such Hwy. 97 access to the plaintiff's property at issue would, however, have to also pass through the swampy area discussed above. Pettigrew testified as to the method of, and costs associated with, constructing a Hwy. 97 access and road through the Sand Hills (TR. 89-92). Pettigrew estimated that, to construct a road to the plaintiff's property at issue from the Settlement's private access road would cost approximately $100,000 if gravel was used and approximately $200,000 if pavement was used (TR. 103). Pettigrew based his estimates on knowledge gained from past involvement with building roads and bridges in Cherry County, but his estimates were not based on knowledge of what would actually be required to build an access to the plaintiff's property at issue. This is because plaintiff produced no evidence that, in advance of pursuing the instant

---

[2] Pettigrew is a registered land surveyor in Nebraska, *inter alia*, and has worked in the fields of surveying, engineering, and road construction for 45 years, most of that experience taking place in Cherry County, Nebraska (TR. 68, 69, 89).

9

litigation, it (or any of its predecessors in interest): (i) applied to the State of Nebraska for an access from Hwy. 97; (ii) attempted to negotiate with the private landowners at the Settlement permission to utilize the Settlement's private access road from Hwy. 97; (iii) employed an expert to determine precisely what ground could be used to construct a road to the plaintiff's property at issue from any access from Hwy. 97 granted by the State of Nebraska or from the Settlement's private access road; or (iv) obtained an estimate of the cost of actually constructing a bridge or culvert over the swampy area that may be crossed by any road between the plaintiff's property at issue and an access off of Hwy. 97 (TR. 91-92, 103).

### III.  CONCLUSIONS OF LAW

The plaintiff argues its right to use the Right-of-Way at issue is either an express easement from the 1962 conveyance of the Federal property at issue to the government, or an easement by implication from the former use of the Right-of-Way at issue by Beel Cattle Company, its predecessors, their invitees and licensees, and others, prior to the 1962 conveyance. The plaintiff prays for the court to enter a declaratory judgment adjudicating its right to use the Right-of-Way at issue. The government admits the Right-of-Way at issue exists, but denies the plaintiff has any legal right to use the Right-of-Way at issue.

#### A.     Express Easement

The plaintiff strenuously argues the court should recognize the plaintiff has a right to use the Right-of-Way at issue because of an express easement in the 1962 Deed. The plaintiff finds the express easement under a reading of the 1962 Deed as unambiguous, and in the alternative, under a reading of the 1962 Deed as ambiguous, but supplemented by the extrinsic evidence offered by the plaintiff. The defendant argues the court's March 4, 2005 Order on the motions for summary judgment determined the 1962 Deed was unambiguous and did not grant the plaintiff an express easement in the Right-of-Way at issue, and that such determination was binding for the duration of the litigation of this action.

The law of the case doctrine does not prevent a district court from reconsidering earlier rulings. **See *Mosley v. City of Northwoods, Mo.*,** 415 F.3d 908, 911 (8th Cir. 2005). The

law of the case doctrine requires a decision made in a former "proceeding" to be the law of the case, but "does not deprive the district court of the ability to reconsider earlier rulings" to avoid reversal of a ruling should it be appealed. *Id.* (quotation marks and internal citations omitted). In weighing the arguments of the plaintiff against the determination of the court in the March 4, 2005 Order, however, the plaintiff's arguments do not persuade the court that it needs to reconsider the determinations in the March 4, 2005 Order to avoid reversal on appeal.

In the March 4, 2005 Order, Judge Pratt determined there were no genuine issues of material fact as to whether there was a reservation in the 1962 Deed of an express easement in the Beel Cattle Company, and that the 1962 Deed was unambiguous in **not** reserving in the Beel Cattle Company any private easement to use the Right-of-Way at issue. The court agrees with the defendant that the language quoted by the plaintiff from the 1962 Deed is taken out of context and does not support the meaning ascribed to the 1962 Deed by the plaintiff.

Both the 1962 Land Purchase Contract, Plaintiff's Exhibit 4, and the 1962 Deed, Plaintiff's Exhibit 3, specifically state that the conveyance of the Federal property at issue from the grantor Beel Cattle Company to the government is, *inter alia*, "subject to any existing rights-of-way in favor of **the public** or in **third parties** for roads . . . over or across said lands." Def.'s Ex. 3 (emphasis added); Pl.'s Ex. 4 at ¶ 11 (emphasis added). Judge Pratt concluded in the March 4, 2005 Order that the plaintiff's argument that there is an express easement fails because the grantor failed to reserve a right for itself to use the Right-of-Way at issue. **See** Filing No. 59, p. 11 ("Critically absent from the qualification ['in favor of the public or in third parties for roads' in the 1962 Deed] is any reference to the right-of-way in combination with the Grantor's interest."). The plaintiff's claimed "key" term "existing," Filing No. 97, p. 1, and proof that the Right-of-Way at issue existed at the time of the 1962 conveyance does not alleviate the requirement that the plaintiff demonstrate that any right to use an "existing right-of-way" ***was reserved in the grantor***. The plaintiff concedes it cannot enforce any right of the public to use the Right-of-Way at issue, Filing No. 97, p. 3-4, and the plaintiff offers no argument as to how the court could construe the term "third parties" to include the grantor.

Therefore, the court concludes no express easement grants the plaintiff a right to use the Right-of-Way at issue.

### B. An Implied Easement

The court must proceed to determine whether, despite no express easement, the plaintiff has a cognizable implied easement to use the Right-of-Way at issue. "There are two types of implied easements: (1) those that arise as an element of necessity or (2) those that arise from what has been said or done by the parties to the transaction." *Hillary Corp. v. U.S. Cold Storage, Inc.*, 550 N.W.2d 889, 895 (Neb. 1996). The plaintiff makes no argument that the court should recognize an easement by necessity in the instant case. Instead the plaintiff argues the court should recognize an "easement by implication from former use" (a former use easement) and that it has proved a former use easement is reasonably necessary for the continued enjoyment of the plaintiff's property at issue.

In determining whether the court should recognize a former use easement, the Nebraska Supreme Court has developed two separate tests depending upon the ownership of the dominant estate following the subdivision of the real property giving rise to the easement. *Bennett v. Evans*, 74 N.W.2d 728, 814 (Neb. 1956) (recognizing the distinction and stating a different rule applies to each). The test relied upon by the plaintiff applies to "implied grants," situations where both the dominant estate and the servient estate are transferred from the grantor at the time the property is subdivided, that is, the grantor retains no interest in the dominant estate. **See, e.g.,** *O'Connor v. Kaufman*, 550 N.W.2d 902, 904 (Neb. 1996); *Hillary Corp.*, 550 N.W.2d at 895. Where the dominant real property remains under the ownership of the grantor at the time the servient property is conveyed, however, the plaintiff must meet a higher standard to prove an "implied reservation" exists. *Bennett*, 74 N.W.2d at 814 ("[A]n implied reservation[,] being one in derogation of the grant, is subject to a different rule.").

The plaintiff ignores this distinction and Judge Pratt's discussion thereof in the March 4, 2005 Order, and argues it proves a former use easement under the following test:

12

> (i)   the use giving rise to the easement was in existence at the time of the conveyance subdividing the property;
>
> (ii)   the use has been so long continued and so obvious as to show that it was meant to be permanent; and
>
> (iii)   the easement is necessary for the proper and reasonable enjoyment of the dominant tract.

***O'Connor***, 616 N.W.2d at 308 (**citing *Hillary Corp.***, 550 N.W.2d at 894). This is the test a plaintiff must satisfy to prove an implied grant should be recognized.

In the present case, however, the plaintiff must prove an **implied <u>reservation</u>** should be recognized. Beel Cattle Company sold off the Federal property at issue in 1964, Plaintiff's Exhibit 4, but Beel Cattle Company did not sell off the plaintiff's property at issue until 1992, Plaintiff's Exhibit 8. To prove an implied reservation should be recognized, the plaintiff must show more than "reasonable necessity" in the third prong; instead a plaintiff must prove the easement is "strictly necessary" for the enjoyment of the dominant estate. ***Chalen v. Cialino***, 291 N.W.2d 256, 260 (Neb. 1980); ***Bennett***, 74 N.W.2d at 735 ("there is no implied reservation of an easement unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained").

> As a general rule, there is no implied reservation of an easement in case one sells a part of his land over which he had previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained. A grantor, as we have seen, can not derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation.

***Chalen***, 291 N.W.2d at 260 (citation and quotation marks omitted). This rule—that "reasonable necessity is required for implied easements in favor of the grantee (implied by grant), but that strict necessity is required for implied easements in favor of the grantor (implied by reservation)"—may be a minority rule, but it is the rule recognized by the Nebraska Supreme Court. Restatement (Third) of Prop.: Servitudes § 2.12 reporter's note (2002). The plaintiff does not provide the court, nor can the court find, any authority stating this is no longer the rule recognized in Nebraska.

Therefore, in order for the court to find an implied reservation of the Right-of-Way at issue, the plaintiff must prove the following three things:

> (i)   the use giving rise to the easement was in existence at the time of the conveyance subdividing the property;
>
> (ii)  the use has been so long continued and so obvious as to show that it was meant to be permanent; and
>
> (iii) the easement is strictly necessary for the enjoyment of the dominant tract.

**Chalen**, 291 N.W.2d at 260. In determining whether a former use easement was created, the court must determine "whether the elements required for creation of [a former use easement] existed at the time of the conveyance subdividing the property." **Hillary Corp.**, 550 N.W.2d at 899. In the instant case, the court must determine whether the former use easement was created at the time of the conveyance from Beel Cattle Company to the government by way of the 1962 Deed.

As to the first prong, the government does not contest that the Right-of-Way at issue was in use at the time of the conveyance subdividing the property. The court finds the evidence at trial easily satisfies the first prong. **See** *supra* pp. 5-6. The court finds the use of the Right-of-Way at issue was in existence at the time of the conveyance subdividing the property.

As to the second prong, the government does not contest that the Route has so long been in continued use and so obvious that it was meant to be permanent. Again, the court must assess whether this prong was satisfied at the time of the subdivision of the properties at issue. **See Hillary Corp.**, 550 N.W.2d at 894-95. While the evidence proves the Right-of-Way at issue has long existed, the court finds some evidence the Right-of-Way at issue, and the longer Route generally, were not meant to be permanent. As discussed in Part II above, the Route was neither oiled nor paved, and very little of it was graded or graveled. The county bridge constructed along the Route to pass over Gordon Creek was not rebuilt once it washed out, nor did Gerald Beel reinstall a later culvert once it also washed out. Gerald Beel testified that, generally speaking, it was not unusual for roads in the area to be abandoned or to develop in a new location, depending upon the needs of the local users. The improvement of

grading and gravelling the Right-of-Way at issue in 1992 by Harlin D. Welch is not relevant to the court's determination of whether, at the time of the 1962 conveyance, the use was intended to be permanent.

Under Nebraska law, former use easements are not favored, and implied reservations are even less favored than implied grants. *Id.* at 897. Despite the evidence to the contrary discussed above, review of the evidence presented at trial persuades the court the use was so long in continued use and so obvious that it was meant to be permanent. **See** Restatement (Third) of Prop.: Servitudes § 2.12 cmt. d (2002) (recommending that "focusing on the reasonable expectations of the parties gives the more accurate view, which is that the [former] use must be more than merely temporary or casual," and giving the example of an easement to run a garden house to the dominant estate as a temporary or causal use, illus. 4, and the example of a rough road built to connect a public highway to a remote parcel as a continuous or permanent use, illus. 3).

As to the third prong, the government opposes the plaintiff's contention that the third prong is satisfied by the evidence offered by the plaintiff. The government argues the plaintiff cannot prove the proposed use of the Right-of-Way at issue is strictly necessary. The government cites evidence that the plaintiff purchased its property for more than $10 million. **See** Pl.'s Ex. 30. The plaintiff makes no argument that it can prove the easement sought is strictly necessary for the enjoyment of the dominant tract, though it does make arguments relevant to that consideration. First, the plaintiff argues the court should only consider the approximate six acres on which the lodge and four cabins are located in considering the value of the property at issue. The plaintiff argues that since it paid approximately $1,800 for the 6 acres on which the lodge and four cabins are located, and the replacement value of such structures would be $150,000-$175,000, those are the values to which the court should compare the cost of constructing a road to the lodge. The plaintiff presented uncontested evidence at trial that construction of a road could be done for as little as $100,000 if gravel was used to surface the road if the plaintiff negotiated an access from Hwy. 97 with the Settlement subdivision.

"The rule of strict necessity is applied to easements that arise by necessity and implied reservations. . . ." *O'Connor*, 616 N.W.2d at 309 (**citing** *Hillary Corp.*, 616 N.W.2d at 897). The court must distinguish strict necessity "from ways of mere convenience[. T]he degree of necessity requisite to support [a finding of strict necessity] is an absolute necessity, for which inconvenience without more does not suffice." *Badura v. Lyons*, 23 N.W.2d 678, 684 (Neb. 1946). "Generally, when [the Nebraska Supreme Court] alludes to implied easements that arise by necessity, [it is] referring to easements that are created to reach land that is otherwise landlocked and could not be utilized." *Hillary Corp.*, 550 N.W.2d at 897. In *Badura*, the Nebraska Supreme Court determined a test of necessity was "by comparing the cost of creating the way with the value of the property." 23 N.W.2d at 684. The *Badura* court concluded that a plaintiff demonstrates necessity where the evidence shows the cost of creating the new way is disproportionate to the value of the property. *Id.* at 685; **see also** *Chalen*, 291 N.W.2d at 260 (finding the plaintiff failed to prove sufficient necessity to grant an implied reservation in the use of a driveway where there was ample room on the plaintiff's property to build a driveway, the costs to the plaintiff would not be exorbitant, nor would the placement of the driveway depreciate the value of the plaintiff's real estate).

First, the court rejects the plaintiff's arguments that only the six acres on which the lodge and four cabins are located should be considered in determining whether an easement is strictly necessary. R. Keith Christensen explained at trial that, when the lodge and four cabins were leased to hunters, the lease gave the lessees access to the entire ranch, not just the six acres upon which the lodge and four cabins are located. Instead, the court must consider the value of the entire property conveyed to the plaintiff, that is, more than $10 million if based upon the April 22, 2005 purchase price paid by the plaintiff.

Second, the court finds the plaintiff has not met its burden of proving the easement is strictly necessary. Before pursuing the instant litigation, the plaintiff made no effort to negotiate with the Settlement for permission to use the Settlement's private access road from Hwy. 97. Nor did the plaintiff apply to the State of Nebraska for a separate access from Hwy. 97. The court cannot assume that either or both of those ways for accessing the plaintiff's property at issue would be denied or would be a significant expense. Furthermore, in light of

16

the value of the property's more than $10 million value, the court does not find the $100,000 estimate for installing a gravel road from either of the proposed Hwy. 97 access possibilities is disproportionate to the value of the property. Moreover, the plaintiff did not provide the court with evidence that a road could not be affordably maintained from the Nebraska Spur Highway 16B to the plaintiff's property at issue.

### IV.  CONCLUSION

For the foregoing reasons, the court finds judgment should be entered in favor of the defendant and against the plaintiff on the plaintiff's claim of a legal right to an easement across the defendant's land.

**IT IS ORDERED:**

Judgment will be granted in a separate document for the defendant and against the plaintiff.

DATED this 2nd day of November, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge